JOHN ERNESTI ET AL., APPELLEES, V. CITY OF GRAND ISLAND ET AL., APPELLANTS.

FILED DECEMBER 22, 1933. No. 28611.

*A. G. Abbott* and *Paul C. Holmberg*, for appellants.

*B. J. Cunningham, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and CLEMENTS, District Judge.

Goss, C. J.

This is an appeal from a judgment enjoining the city of Grand Island from enforcing the provisions of an ordinance fixing hours when barber shops may open and close. The district court found that the hours of closing section was unreasonable and that the exemption of beauty parlors was discriminatory in that it was not uniform as to classes doing the same work.

The first section of the ordinance defined barbering as constituting the doing upon the upper part of the human body, for cosmetic purposes and not for the treatment of disease or physical or mental ailments, the following, when done for pay:

"Shaving or trimming the beard or cutting the hair; giving facial and scalp massage or treatment with oils, creams, lotions or other preparations either by hand or mechanical appliances; singeing, shampooing or dyeing the hair, or applying hair tonics; applying cosmetic preparations, antiseptics, powders, oils, clay or lotions to scalp, face, neck or upper part of the body.

"Persons engaged in operating or employed in beauty shops or hair-dressing parlors patronized by women and children shall be exempt from the provisions of this ordinance."

Succeeding sections provided for inspection and enforcment by the board of health, including the issuance of permits and collection of an annual fee from each shop and person doing barbering, prescribed in detail sanitary and sterilized tools, instruments and objects contacted with the customer, prohibited employment of any one afflicted with a communicable disease, and fixed opening hours at not earlier than 7:30 a m., with closing hours not later than 7:00 p. m., except on the days preceding the major five holidays, when the closing hour might be extended to 10:00 p. m. It provided for all day closing on Sundays and the five holidays named.

The definition of barbering in the ordinance is the same as' that in the statutes. Comp. St. 1929, sec. 71-2002.

The regulations in the ordinance are devised largely from the chapter in the statutes (sections 71-2001 to 71-2027) authorized to be cited as "The Barber Act." The point of difference particularly involved is that the ordinance fixes a closing hour. This controversy springs from that point.

Appellants seek justification of the ordinance as a health measure authorized to be enacted by the city council under the police power. Indeed, the committee of the council, having the proposed ordinance under consideration, recommended "that the so-called barber closing ordinance be passed as a health measure." Appellees claim the ordinance is discriminatory as to the closing hour because its terms do not apply to, but expressly except, the so-called beauty parlors from its operations, though they perform in many respects the same service as barber shops. This charge of unlawful discrimination is based upon the Fourteenth Amendment of the Constitution of the United States, which provides: "Nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The Nebraska Constitution reiterated the due process clause of the federal Constitution. Const. art. 1, sec. 3.

Without quoting the testimony, we derive from it that operators in beauty shops cut hair of women and children and shave the hair from the necks of such as need or desire it; that approximately an equal number of these have such work done in barber shops and in beauty shops. The latter solicit hair-cutting business in newspaper advertisements. It is notable that the ordinance especially exempted these shops from the operation of the ordinance.

The end sought by the city council, as indicated by the evidence, was that of better inspection of barber shops while in operation under the closing hours fixed; it being the theory that these hours would usually be in daylight. This evidently does not take cognizance of the fact that some apparently very clean and sanitary shops are con-

ducted in basements and elsewhere where artificial light is always needed. This is true also of beauty shops. The city claims to find it inconvenient to inspect barber shops after 7:00 p. m., and assumes that danger to health would lurk in barber shops in the hour or two later they might operate, if not so limited by ordinance. We do not think the evidence or the situation justifies the fear, if proper daytime inspection is given by officials. If germs develop overnight, by reason of origin later than 7 o'clock in the evening, they may be more readily detected the next day. The state, with about the same regulations to prevent the communication of disease from barbers and barber shops to customers, contents itself with only a few examinations of shops each year. Delay, overnight, on the part of the city to perform this function is not likely to be disastrous.

The acts performed on customers of barber shops and on customers of beauty shops seem very similar in their nature. In their relation to health and disease about the only real difference is that arising from the difference in the sexes treated.

Within the jurisdiction of each there is no constitutional difference between a discriminatory statute and a discriminatory ordinance. Under the Constitution, persons in the same class, or who should be considered as included within the relations and circumstances provided for, must be governed by the same rules; otherwise the legislation is unconstitutional.

A law requiring railroads, canals and certain other corporations to maintain crossings and bridges where they cross highways, but exempting irrigation companies from the rule, is void. *State v. Farmers & Merchants Irrigation Co.,* 59 Neb. 1. In the course of that opinion Sullivan, J., said:

"It has been said, frequently, in the opinions of this court, that where a law is general and uniform throughout the state, operating alike upon all persons and localities of a class, it is not objectionable as wanting uniformity of operation, or as being in the nature of special

legislation. See *State v. Graham*, 16 Neb. 74; *State v. Berka*, 20 Neb. 375; *County of Lancaster v. Trimble*, 33 Neb. 121; *State v. Robinson*, 35 Neb. 401; *Van Horn v. State*, 46 Neb. 62. 'To this general statement,' it is said in *Livingston Loan & Building Ass'n v. Drummond*, 49 Neb. 200, 205, 'it is perhaps necessary to add a qualification. The legislature may not arbitrarily and without any possible reason create a class to be affected by legislation where the result would be an infringement upon the constitutional prohibition.'

"The rule established by the authorities is that while it is competent for the legislature to classify, the classification, to be valid, must rest on some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects classified. See Cooley, Constitutional Limitations (5th ed.) 481."

Without covering the vast field opened up by the arguments and briefs of the parties, it is sufficient to say that the classification by the ordinance of barbers as within the rules and the express exemption therefrom of beauty shop operators is discriminatory in that it is not uniform as to classes doing similar work, is arbitrary under the evidence, and is unconstitutional. No reason of public policy and no substantial difference of circumstances authorize the exemption. The judgment of the district court is right. It is

AFFIRMED.