STATE *v.* HARRIS.

(*Knoxville*, September Term, 1934.)

Opinion filed November 30, 1934.

NAT TIPTON, Assistant Attorney-General, for the State.

CYRIL J. SMITH, of Rockwood, for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The state has appealed from a judgment of the circuit court of Roane county quashing an indictment, charging defendant with operating a truck upon public highways and furnishing transportation for hire, without procuring "a contract hauler's permit" from the State Railroad and Public Utilities Commission.

In quashing the indictment, the circuit court sustained defendant's contention that the controlling statute, Acts 1933, chapter 119, is unconstitutional and void, because (1) it contains provisions which are not indicated in its caption, violating the state Constitution, article 2,

section 17; and (2) it operates to deprive the defendant of property rights without due process of law.

The caption of the statute describes it as providing for "the regulation . . . of persons . . . owning, controlling, operating or managing motor vehicles for the transportation of persons or property, for compensation, as common carriers, or pursuant to special contract, upon the highways of this state," etc.

Section 7 (a) of the statute makes it unlawful for any contract hauler to operate without first obtaining the designated permit. A "contract hauler" is defined as one engaged in the transportation of persons or property for compensation, under special or individual agreements, not operating as a common carrier, and not limiting operation to a particular town and its suburbs. Section 1 (c).

It is urged that the effect of the statute is to prohibit the operations of contract haulers except under limited conditions, and that this prohibition is not indicated by, or included within, the regulation of which the caption gives notice.

The import of the "regulation, supervision and control" of contract haulers expressed in the caption is affected by the nature of the subject to which it is applied. The business of using the public highways for profit, earned by transporting persons and property for hire, has been definitely excluded from the category of private or personal rights arising from citizenship. Recent decisions of the Supreme Court of the United States have determined certain fundamental principles concerning the use of the highways. One is "that the primary use of the state highways is the use for private purposes; that no person is entitled to use the highways

for gain as a matter of common right." *Hoover Motor Express Co.* v. *Fort*, 167 Tenn., 628, 72 S. W. (2d), 1052, 1055. The statement and definition of the terms and conditions upon which a privilege, not a matter of common right, may be exercised is, we think, within the declared purpose of regulation and does not amount to prohibition. In such a case the prevention of an unauthorized exercise of the privilege is clearly implied in the statement of the purpose to regulate it.

The statute under consideration is a comprehensive regulation of the use of the state highway system by both common carriers and contract carriers. It is designed, as declared in section 21, to promote and preserve economically sound transportation, to regulate the burden of use to which the highways may be subjected, to protect the safety of the traveling public, and to protect the property of the state in the highways from unreasonable, improper, or excessive use.

In pressing his contention that the enforcement of the statute will deprive him of property without due process of law, the defendant is limited to the general aspects of the regulation imposed upon contract carriers. The record does not disclose that he has applied for and been denied a permit, nor does it disclose the kind or character of defendant's business as shedding light on his right or obligation to obtain a permit. The sufficiency of the indictment in its statement of the accusation is not challenged. Consequently, if the statute can be sustained by any reasonable construction of the requirement that contract haulers must apply for and obtain a permit to operate, that construction will be sufficient to require the defendant to go to trial on the merits of the charge. No rules or policies of the Railroad and Public Utilities Com-

mission are before us for the determination of their reasonableness or validity.

The statute, Acts 1933, chapter 119, section 7 (a), provides for a hearing upon any application for a contract hauler's permit, and continues: "If the Commission shall find from the evidence that the public will be benefited by the creation of the proposed service, as the Commission shall determine, a contract hauler's permit therefor shall be issued."

Defendant argues that by these provisions, the Commission may not issue the permit except upon a showing that the public will be benefited by its issuance, and that this is a condition impossible of compliance in the case of an operator desirous of executing a limited number of private contracts for the carriage of goods. His contention is that the Legislature is without power to impose impossible or purely arbitrary conditions on the right to carry on a legitimate business, notwithstanding it involves a permissive use of the state highways.

In taking this position, as in other positions with respect to the construction of the statute, the defendant has evinced a disposition in his brief to assume that the statute would be enforced by the Commission in an oppressive and arbitrary manner. We cannot follow him in this assumption, there being nothing on the record to support it.

The statute permits the use of the highways for the transportation of passengers and property under private contract, as well as by common carriers. The regulatory provisions must be construed, if possible, so as to advance and not defeat this legislative intent. With this in view, it seems obvious that when the statute, by the use of the word "shall," mandatorily requires that

a permit shall be issued for a contract service which will be a benefit to the public, it does not necessarily imply that the permit must be denied if no public benefit is shown. The statute contains no mandatory direction for the refusal of a contract hauler's permit. Even when the granting of the permit might impair the service of an authorized common carrier, the direction of section 7 (a) is that the "application may be refused," leaving to the Commission some discretion as to its issuance.

In determining whether such permits shall issue, and on what terms and conditions, the Commission is not left to arbitrary action. It may refuse or limit the permit when necessary to protect the public service rendered by authorized common carriers, and for this purpose may take into consideration the rates proposed to be charged. See *Stephenson* v. *Binford*, 287 U. S., 251, 53 S. Ct., 181, 77 L. Ed., 288, 87 A. L. R., 721. Whether the statute authorizes the absolute refusal of an application for such permit on any other ground can well be pretermitted until complaint is made that the Commission has improperly undertaken so to do. Undoubtedly it may reasonably qualify its permits, so as to effectuate the legislative purposes stated in section 21 of the statute.

These general observations sufficiently state our conclusion that the statute does not operate arbitrarily to deny due process of law to a contract hauler who has made no effort to secure a permit authorizing his use of the public highways.

The judgment of the circuit court quashing the indictment is accordingly reversed, and the case remanded for further proceedings. The defendant will pay the costs of the appeal.