SPOONE *et al. v.* MAYOR & ALDERMEN OF TOWN OF MORRISTOWN.

(*Knoxville,* September Term, 1947.)

Opinion filed December 8, 1947.

JOHN R. KING, of Morristown, for appellants.

EARNEST R. TAYLOR of Morristown, for appellees.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The bill herein was filed by the complainants. to enjoin the enforcement of an ordinance of the defendant City and to have the ordinance declared void. The Chancellor sustained the demurrer of the City and dismissed the bill. The complainants have appealed to this court.

The bill avers that the complainants are the owners and operators of taxicabs in Morristown and that as such they have complied with all laws and ordinances applicable to the operation of their business, including payment of all license fees, etc. It is further set out that the City passed an ordinance which provides: ''Taxicabs, or automobiles operated for passenger hire, shall not use any part of the public streets or alleys as a cab stand for the purpose of parking there to await being hired, or to park there to await a call or for any other purpose except to discharge a passenger, or to wait momentarily for a passenger who has the services of the cab engaged, and who is expected to return. It is the intent and purpose of this ordinance to require all persons, firms or corporations operating taxicabs or automobiles for hire, to establish taxi stands and parking ground for taxi stands off the public streets or alleys of the municipal corporation.'' This is an amendment to a penal ordinance.

They aver that they have no parking ground and that none is available to them. They contend also that the City is estopped from enforcing this ordinance impairing the value of a license or licenses they have paid the City

for. "They allege that said ordinance is unreasonable and oppressive. Instead of regulating, it prohibits. They further allege that it is discriminatory and unfair to complainants, and does the irreparable injury, and is inconsistent with the policy of defendant with respect to the use other kind of vehicles are permitted to make of the streets in said town. Other kind of vehicles, coal trucks, cattle trucks, freight trucks, private automobiles, passenger busses, vans, drays, wagons, etc., and in fact any kind of vehicle, except a cab used in taxi service, may park on any street in said town."

The demurrer of the City is on two grounds, to wit:

"(1) That there is no equity on the face of the bill.

"(2) Because the bill seeks to enjoin the enforcement of an ordinance passed by the defendant municipal corporation in the exercise of its police power under and by virtue of its charter of incorporation."

By this demurrer the defendant City "confesses the truth of the facts alleged in the bill" but says even though thus admitting the facts that the Chancery Court has no power to enjoin the enforcement of penal statutes or ordinances.

Mr. Justice SHIELDS in *Kelly & Co.* v. *Conner*, 122 Tenn. 339, 123 S. W. 622, 25 L. R. A., N. S., 201 delivered for the Court an excellent and able opinion on the subject. This opinion covers 54 pages of the reports and in the course of the opinion cases pro and con from almost every jurisdiction in this country and England are cited and analyzed. Among the cases cited are cases from jurisdictions, here cited, which reach a contrary decision to that as reached in the *Kelly Case*. For good and sufficient reasons Mr. Justice SHIELDS differentiates or disagrees with these cases.

Whenever the question has been raised we have consistently adhered to the conclusion reached in the *Kelly Case*. The personnel of this Court has completely changed since Mr. Justice SHIELDS wrote the opinion referred to. Again considering the matter we are of the opinion that the principle there announced is sound and should be followed.

A number of cases have arisen since, where the Chancery Court took jurisdiction, but in none of these cases was the question of the jurisdiction of the Court for this reason raised. In these cases it is frequently suggested that ''the question of the jurisdiction of the Chancery Court to enjoin a penal ordinance relied upon in this court'' (*Cravens et al.* v. *Storie et al.*, 175 Tenn. 285, 290, 133 S. W. (2d) 609, 610, is not mentioned.

In *Kelly & Co.* v. *Conner, supra*, at page 396 of 122 Tenn., at page 636 of 123 S. W., 25 L. R. A., N. S., 201, it was said: ''We are further of the opinion that courts of equity have no jurisdiction to enjoin threatened criminal proceedings under a statute enacted by a state in the exercise of the police power in relation to which the Legislature has complete jurisdiction, although it be charged that the statute is invalid and that a multiplicity of actions thereunder will injure and destroy civil and property rights of the complainants, and that the damages resulting will be irreparable, when the complainants' defense thereto, in a court having jurisdiction of the offense, is adequate and unembarrassed; and we hold that the Chancery Courts of Tennessee, neither under their inherent nor statutory jurisdiction, have any such power or jurisdiction, whatever may be the exceptions to the general rule in the courts of equity of other jurisdictions.''

■ For the above reasons the Chancellor was correct in vacating the injunction and in dismissing the bill.

Suppose though that the question of jurisdiction was waived and not raised yet we feel the ordinance valid.

■ The business of carrying passengers for hire is a privilege, the licensing, regulation, and control of which is a legislative prerogative. The power to regulate the roads and streets is likewise a legislative prerogative. This right may be delegated to the cities, which then may, by ordinance, regulate and control the use and operation of taxicabs on the streets thereof. *Tennessee Coach Co.* v. *Lenoir City*, 179 Tenn. 453, 167 S. W. (2d) 335, 144 A. L. R. 1116 and Annotation following.

■ The Charter of The Town of Morristown, Chapter 103 of the Public Acts of 1903, expressly confers this right on the municipality. The language of the Act does not expressly use the term ''taxicab'' but ''taxicabs'' clearly come within the language—''To license, tax and regulate hackney coaches, carts, omnibuses, wagons and drays''. The complainants have been and were at the time of the filing of this bill paying license fees, etc., pursuant to ordinances passed under this language of the charter.

■ The operation of taxicabs is a privilege which the City, under proper legislative authority, may grant or withhold. *Memphis Street Ry. Co.* v. *Rapid Transit Co.*, 133 Tenn. 99, 179 S. W. 635, L. R. A. 1916B, 1143, Ann. Cas. 1917C, 104. In thus using the streets a city may impose reasonable conditions upon taxicabs and other related motor vehicles operating as a common carrier of passengers. 1 Blashfield Cyc. Auto. Law & Prac. Perm. Ed., sec. 105. This power of the city exists not alone through its licensing power but also ''in the exercise of police powers, to prevent traffic congestion and

the dangers incident thereto''. *Tennessee Coach Co.* v. *Lenoir City, supra* [179 Tenn. 453, 167 S. W. (2d) 337].

In *Buck* v. *Kuykendall*, 267 U. S. 307, 45 S. Ct. 324, 325, 69 L. Ed. 623, 38 A. L. R. 286, the Supreme Court of the United States said: ''. . . A citizen may have under the Fourteenth Amendment, the right to travel and transport his property upon them (the public highways) by auto vehicle, but he has no right to make the highways his place of business by using them as a common carrier for hire. Such use is a privilege which may be granted or withheld by the state in its discretion, without violating either the due process clause or the equal protection clause.''

It is very vigorously argued that this ordinance is discriminatory, unfair and oppressive because vehicles of all other kinds are permitted to park on any street in town.

■ The ordinance here in question applies to all taxicabs alike. It does not prohibit them from using the streets for transporting, loading and unloading passengers and their belongings. It merely requires them to get private property for their ''stand'' or parking place which they use as a depot or terminal. There can be nothing unreasonable in this. McQuillan on Municipal Corporations, 2d Ed., sections 1423 and 1461.

■ For an ordinance to be discriminatory in the sense here spoken of it must discriminate between persons in a like situation, i. e., when persons engaged in the same business are subject to different restrictions or given different privileges under like conditions. *Steil* v. *City of Chattanooga*, 177 Tenn. 670, 152 S. W. (2d) 624.

All taxicabs are treated alike under the ordinance before us.

It is alleged in the bill that the complainants can get no place as a stand or parking lot and, it may be inferred that if the ordinance is valid, they will be forced out of business. The fact that they will suffer pecuniary loss or injury from the enforcement of this ordinance has no tendency to establish its unreasonableness or invalidity. *Auto Transit Co.* v. *City of Ft. Worth, Texas*, Civ. App. 182 S. W. 685; *Grainger* v. *Douglas Park Jockey Club*, 6 Cir., 148 F. 513, 8 Ann. Cas. 997; 1 Blashfield, *supra,* section 105.

We have made a rather thorough search of the authorities on the subject. All that we find uphold an ordinance of the kind as a valid ordinance. Many cases are cited in the various supplements of McQuillan at the sections thereof above referred to.

We find no error in the Chancellor's decree sustaining the demurrer and dismissing the bill. The decree below is affirmed.

All concur.